UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| | ) 1:18-CR-83 |
| V. | ) |
| | ) JUDGES COLLIER/STEGER |
| | ) |
| CLIFTON WARD | ) |

## PLEA AGREEMENT

The United States of America, by the United States Attorney for the Eastern District of Tennessee, and the defendant, CLIFTON WARD, and the defendant's attorney, Gianna Maio, have agreed upon the following:

1. The defendant will plead guilty to the following count in the indictment:

    Count One. Influencing federal official by threat, in violation of 18 U.S.C. § 115(a)(1)(B) and (b)(4). The punishment for this offense is as follows: up to six years' imprisonment, up to three years of supervised release, up to a $250,000.00 fine, restitution if appropriate, and a $100 special assessment fee.

2. The United States will move to dismiss the remaining count at the time of sentencing.

3. The defendant has read the indictment, discussed the charges and possible defenses with defense counsel, and understands the crimes charged. Specifically, the elements of the offenses are as follows:

    18 U.S.C. § 115(a)(1)(B)

    1. The defendant threatened to assault, kidnap, or murder a United States official, a United States judge, a Federal law enforcement officer, or an official whose killing would be a crime under 18 U.S.C. § 1114

2. With the intent to

   a. impede, intimidate, or interfere with such official, judge, or law enforcement officer while he or she was engaged in the performance of official duties, or

   b. with the intent to retaliate against such official, judge, or law enforcement officer on account of the performance of official duties.

4. In support of the defendant's guilty plea, the defendant agrees and stipulates to the following facts, which satisfy the offense elements. These are the facts submitted for purposes of the defendant's guilty plea. They do not necessarily constitute all of the facts in the case. Other facts may be relevant to sentencing. Both the defendant and the United States retain the right to present additional facts to the Court to ensure a fair and appropriate sentence in this case.

The defendant made two threats to Congressman Diane Black.[1] FBI Special Agent Scott Barker was contacted by Vernida A. Long, a Special Agent with the United States Capital Police in Washington, DC, regarding the threats made to Congressman Black. Long provided Barker with copies of two messages left on Congressman Black's voice mail at her Gallatin, Tennessee Congressional Office. The messages came from a telephone number registered to the defendant in Chattanooga, Tennessee. The following is a summary of the voice mails received at Black's office:

The first message was received on May 18, 2018. The defendant stated he was going to sexually assault Congressman Black. The defendant used graphic and vulgar language in making the threat. On that same message, the defendant stated to Congressman Black that he "would also be seeing her."

---

[1] Diane Black is a former member of the House of Representatives. She did not seek re-election in 2018. Also, she prefers the title "Congressman" to "Congresswoman"; counsel has honored her preference.

The second message was received on June 12, 2018. The defendant called Congressman Black a pejorative/vulgar word. The defendant asked if Congresswoman Black was going to "still build that wall" and then followed with "'cause we're gonna need something to put on top of you."

The defendant attempted to contact Congressman's Black's office hours later, but her staff did not answer the phone as they could see the calls came from the defendant's telephone number.

After the first call on May 25, 2018, Agent Barker interviewed the defendant at the defendant's residence. Barker asked the defendant if he had left a message on Black's answering machine. The defendant admitted to leaving the threatening message on her voice mail. The defendant admitted he was at his residence located in Chattanooga, Tennessee when he made the call. The defendant further admitted to using his cell phone to make the call. The defendant stated that he did not know which office he called, but he called one of the listed numbers for Congressman Black. Agent Barker asked the defendant not to make further calls to Black's office or to Black. The defendant agreed that he would not.

On June 18, 2018, after the second call was made to Congressman Black, Barker again interviewed the defendant, this time by telephone. The defendant again admitted that he had reached out to Black, stating that he had left another message on Black's voice mail. The defendant further admitted that he called Black a vulgar curse word, and he admitted that he asked "if a wall was going to be built" because something was needed "to put on top" of her. The defendant admitted he was at his residence located in Chattanooga, Tennessee when he made the second call. He stated he used his cell phone to make the call to Black's office.

At the time of the threats, Congressman Black was a United States Official as that term is described in the code. The defendant did not know Congressman Black personally. The defendant's

statements to Congressman Black were made for the purpose of a impeding, intimidating, or interfering with her while she was engaged in the performance of her official duties.

The above events took place in the Eastern District of Tennessee and elsewhere.

5. The defendant is pleading guilty because the defendant is in fact guilty. The defendant understands that, by pleading guilty, the defendant is giving up several rights, including:

    a) The right to plead not guilty;

    b) The right to a speedy and public trial by jury;

    c) The right to assistance of counsel at trial;

    d) The right to be presumed innocent and to have the burden of proof placed on the United States to prove the defendant guilty beyond a reasonable doubt;

    e) The right to confront and cross-examine witnesses against the defendant;

    f) The right to testify on one's own behalf, to present evidence in opposition to the charges, and to compel the attendance of witnesses; and

    g) The right not to testify and to have that choice not used against the defendant.

6. Pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure, the parties recommend that the defendant be given a sentence of time served, followed by three years of supervised release. The United States will make known to the Court and the Probation Office all facts in its possession regarding the case. Furthermore, the United States' agreement does not limit the Court's discretion in sentencing the defendant and is not binding on the Court. Additionally, the Court may impose any lawful fine and any special assessment fees as required by law, and order restitution as appropriate.

7.      Given the defendant's agreement to plead guilty, the United States will not oppose a two-level reduction for acceptance of responsibility under the provisions of Section 3E1.1(a) of the Sentencing Guidelines. Further, if the defendant's offense level is 16 or greater, and the Court awards the two-level reduction pursuant to Section 3E1.1(a), the United States agrees to move, at or before the time of sentencing, the Court to decrease the offense level by one additional level pursuant to Section 3E1.1(b) of the Sentencing Guidelines. Should the defendant engage in any conduct or make any statements that are inconsistent with accepting responsibility for the defendant's offenses, including violations of conditions of release or the commission of any additional offenses prior to sentencing, the United States will be free to decline to make such motion, to withdraw that motion if already made, and to recommend to the Court that the defendant not receive any reduction for acceptance of responsibility under Section 3E1.1 of the Sentencing Guidelines.

8.      The defendant agrees to pay the special assessment in this case prior to sentencing.

9.      Financial Obligations. The defendant agrees to pay all fines and restitution imposed by the Court to the Clerk of Court. The defendant also agrees that the full fine and/or restitution amounts shall be considered due and payable immediately. If the defendant cannot pay the full amount immediately and is placed in custody or under the supervision of the Probation Office at any time, the defendant agrees that the Bureau of Prisons and the Probation Office will have the authority to establish payment schedules to ensure payment of the fine and/or restitution. The defendant further agrees to cooperate fully in efforts to collect any financial obligation imposed by the Court by set-off of federal payments, execution on non-exempt property, and any other means the United States deems appropriate. The defendant and counsel also agree that the defendant may be contacted post-judgment regarding the collection of any financial obligation imposed by the

Court without notifying the defendant's counsel and outside the presence of the defendant's counsel. In order to facilitate the collection of financial obligations to be imposed with this prosecution, the defendant agrees to disclose fully all assets in which the defendant has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or other third party. In furtherance of this agreement, the defendant additionally agrees to the following specific terms and conditions:

    a) If so requested by the United States, the defendant will promptly submit a completed financial statement to the U.S. Attorney's Office, in a form it provides and as it directs. The defendant promises that such financial statement and disclosures will be complete, accurate, and truthful.

    b) The defendant expressly authorizes the U.S. Attorney's Office to obtain a credit report on the defendant in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

    c) If so requested by the United States, the defendant will promptly execute authorizations on forms provided by the U.S. Attorney's Office to permit the U.S. Attorney's Office to obtain financial and tax records of the defendant.

10. This plea agreement becomes effective once it is signed by the parties and is not contingent on the defendant's entry of a guilty plea. If the United States violates the terms of this plea agreement, the defendant will have the right to withdraw from this agreement. If the defendant violates the terms of this plea agreement in any way (including but not limited to failing to enter guilty pleas as agreed herein, moving to withdraw guilty pleas after entry, or by violating any court order or any local, state or federal law pending the resolution of this case), then the United States will have the right to void any or all parts of the agreement and may also enforce whatever parts of

the agreement it chooses. In addition, the United States may prosecute the defendant for any and all federal crimes that the defendant committed related to this case, including any charges that were dismissed and any other charges which the United States agreed not to pursue. The defendant expressly waives any statute of limitations defense and any constitutional or speedy trial or double jeopardy defense to such a prosecution. The defendant also understands that a violation of this plea agreement by the defendant does not entitle the defendant to withdraw the defendant's guilty pleas in this case.

11. The United States will file a supplement in this case, as required in every case by the Local Rules of the United States District Court for the Eastern District of Tennessee, even though there may or may not be any additional terms. If additional terms are included in the supplement, they are hereby fully incorporated herein.

12. This plea agreement and supplement constitute the full and complete agreement and understanding between the parties concerning the defendant's guilty plea to the above-referenced charges, and there are no other agreements, promises, undertakings, or understandings between the defendant and the United States. The parties understand and agree that the terms of this plea agreement can be modified only in writing signed by all of the parties and that any and all other promises, representations, and statements whether made before, contemporaneous with, or after this agreement, are null and void.

J. DOUGLAS OVERBEY
UNITED STATES ATTORNEY

3/14/19
Date

By: _____
Perry H. Piper
Assistant United States Attorney

3-13-19
Date

_____
Clifton Ward
Defendant

3.13.19
Date

_____
Gianna Maio
Attorney for the Defendant